**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DR. GABRIEL D. ALUNGBE | : | CIVIL ACTION NO. |
|    *Plaintiff*, | : | 3:01CV00503(EBB) |
| | : | |
| | : | |
|    V. | : | |
| BOARD OF TRUSTEES OF | : | |
| CONNECTICUT STATE UNIVERSITY | : | |
| (CSU) SYSTEM, ET AL., | : | |
|    *Defendants* | : | APRIL 19, 2005 |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE**

The defendant moves to exclude certain evidence that is irrelevant or its prejudicial effect will confuse or mislead the jury thereby outweighing any probative value. As discussed more fully below, several pieces of evidence that the plaintiff may attempt to offer must be excluded. The defendant asks the court to carefully consider the information in support of the motion in limine and formally requests a Rule 104 hearing requiring the plaintiff to make an offer of proof regarding the admissibility of the contested evidence.

As a preface, the sole issue before the court is whether the decision by then CCSU President Richard Judd to deny the plaintiff's request for promotion in 1999 was motivated by the plaintiff's race, national origin or color. Though the plaintiff did apply for promotion several years prior to and after 1999, those claims have been dismissed on summary judgment. (Doc. # 35, September 4, 2003, Goettel, J). The defendant fully expects that the plaintiff will attempt to offer both a 1996 faculty diversity climate survey and the plaintiff's prior applications for promotion as part of his case-in-chief. For the reasons set forth below, such information is inadmissible.

**THE 1996 DIVERSITY CLIMATE SURVEY REPORT IS INADMISIBLE BECAUSE IT LACKS ANY PROBATIVE VALUE, IS NOT FACT SPECIFIC AND ITS PREJUDICIAL EFFECT OUTWEIGHS ANY PROBATIVE VALUE**

In June 1996, Richard Judd was appointed as the new President of Central Connecticut State University ("CCSU"). In August 1996, shortly after Judd's arrival at CCSU, two female faculty complained that the then Dean of the School of Technology, Dr. John Wright, did not look favorably upon female faculty for promotion. In response to these two complaints, a survey was conducted by a private consulting firm. The consulting firm's task was to interview faculty and staff within the School of Technology and report back about the perceptions within that department. The study was designed to be an opinion survey and was NOT fact specific to any particular faculty member or situation. According to then Director of Human Resources, Donna Munroe, the opinion study did not pertain to President Judd's tenure or to Dean Zdzislaw Kremens, who was not appointed to the Dean's position until **September 1998**. A copy of the study is attached to this motion as addendum "A."

With this background, the defendant objects to the admission of the 1996 opinion climate survey because it is immaterial to the facts in the present case, it contains unfounded opinion, is hearsay and any probative value is outweighed by its prejudicial effect. More specifically, the defendant objects that permitting a jury to infer from an overly general opinion survey that President Judd, to whom the study does not apply, was motivated by the plaintiff's race, national origin or color. Unfortunately, the trial court that addressed the issue of summary judgment improperly considered the 1996 report, perhaps because insufficient information was presented to establish just how far fetched and prejudicial such an opinion survey was in this case.

1. <u>The Report Lacks Foundation and Probative Value.</u>

The 1996 climate report is based on the opinions of those surveyed with regard to their feelings concerning what they perceived to be the climate of the Engineering and Technology Department. The Report is not based on any factual instances in connection with the instant case. In fact, page two of the Report specifically states, ***"[t]he goal of this project is not and was never to conduct an investigation to determine the specific facts in any particular grievance, complaint or allegation against any individual, group, or institution."*** The survey was not conducted in connection with any specific person or incident and it was not designed to be specific to any facts. More troubling, as the affidavit of Ms. Munroe points out, is that the report did not pertain to President Judd's tenure or to the Dean of the School of Technology involved in the promotion process in <u>1999</u>. The report can only speak to the tenure of former President Schumaker and Dean John Wright, neither of whom had involvement in the 1999 decision not to promote the plaintiff. Ms. Munroe's affidavit is attached to this memorandum as addendum "B."

Additionally, the opinions gathered and asserted in this Report are anonymous in nature, furthering lacking the foundation necessary to establish verifiability, credibility, and relevance to the instant case. Since the 1996 survey lacks probative value in accordance with Fed. R. Evid. 402, it should be deemed inadmissible for purposes of this trial.

2. <u>The Report is Based Upon Inadmissible Hearsay</u>

The Report itself is inadmissible hearsay and contains hearsay within hearsay that does not fall under an exception to the hearsay rule. A careful review of the 1996 Report

3

shows that not only was the methodology for the survey NOT intended for a factual application to a specific situation, but any opinions of unidentified faculty is inadmissible hearsay. Assuming that sufficient foundation could be laid establishing some relevance, any opinions or alleged facts stated therein could only be used to prove the matters asserted therein. Those statements could not be cross examined, which is the test of hearsay. See Crumpacker v. Kansas Dept. of Human Resources, 2004 WL 1846146 (D. Kan. 2004)(similar type opinion survey excluded on hearsay grounds).

      3.     The Report is Unduly Prejudicial

The most troubling aspect of the 1996 survey is the unfair prejudice and confusing effect it could have on a jury. The defendant cannot stress enough how misleading it would be for a jury to infer discriminatory animus on the part of President Judd or those involved in the promotion process at CCSU. In short, and in accordance with Fed. R. Evid. 403, the prejudicial effect of such evidence will outweigh any probative value and should be precluded.

In Crumpacker v. Kansas Dept. of Human Resources, supra, the federal court faced an identical situation. In that case, the plaintiff sought to offer an "anonymous climate survey" conducted in 2000 of the Kansas Department of Human Resources employees. The survey was conducted and then the results were complied, much as in the present case. The defendant moved to exclude the report as containing double hearsay and because of its prejudicial effect. The district court agreed and excluded the employee survey on both grounds. The same reasoning from Crumpacker applies equally to the current action.

**THE PLAINTIFF'S PRIOR APPLICATIONS FOR PROMOTION ARE NOT PROBATIVE OF INTENTIONAL DISCRIMINATION OR PRETEXT IN 1999 BECAUSE OF CONTEXTUAL DISSIMILARITIES.**

At trial, the plaintiff may attempt to offer his prior applications for promotion in 1995-1998 as part of an ill conceived argument that prior unsuccessful applications somehow make the stated explanation for the plaintiff's rejection in 1999 less credible. Alternatively, the plaintiff may argue that this evidence is simply historical background.

The Court in the present case has already ruled that the plaintiff's application for promotion prior 1999 are not material to the requisite discriminatory practices under girded by a discriminatory policy to warrant application of the continuing violation exception.  (See Ruling on Defendant Motion for Summary Judgment, September 4, 2003).  This Court has held that when a claimant fails to produce sufficient evidence to establish a continuing violation, the claimant cannot then use the same evidence to "establish a pattern or practice of discrimination as part of his prima facie case." Wingfield v. United Technologies Corp., 678 F. Supp. 973 (D.Conn. 1988); *See also* Martinez v. United Technologies Corp, 1998 WL 342043, *3 (D.Conn. 1998) (citing Wingfield).  Allowing the plaintiff to introduce evidence of his prior denials for promotion would undermine the Wingfield holding and the law of this case. The only probative evidence are facts showing the defendant's motive for its decision in 1999.

The defendant submits that in order for the plaintiff's prior applications for promotion at CCSU to be relevant evidence on the disparate treatment claim in this particular case,  the inquiry into probative value must remain focused on whether such evidence of pre-1999 applications for promotion involve a consistent group of actors against a particular plaintiff and that the acts were similar in kind.  The plaintiff must

5

show substantial similarities between prior and present promotion denials in the following respects: a) the promotions procedures; b) the decision-makers (or influence on each other); c) the applicant pools; and d) the applicants qualifications. *See* Palmer v. Bd. of Regents of the Univ. System of Georgia, 208 F.3d 969, 973 (11th Cir. 2000) (upholding district court's decision to exclude evidence of other lawsuits because those complaints involved different decision-makers, different departments, and different hiring practices).

The rationale for requiring sufficient foundation to make such alleged acts probative is twofold. First, a jury must not be permitted to infer liability to later decisions based on prior dissimilar acts, especially in a disparate treatment case. Second, having found that the plaintiff cannot premise his lawsuit on untimely acts that are time barred, admitting such evidence without the requisite similarity to the circumstances in 1999 would effectively make the defendant litigate prior acts that are no longer part of this case. See Lyons v. England, 307 F.3d 1092, n.13 (9th Cir. 2002)(court can exclude evidence that requires mini trial on matters already dismissed).

In Wingfield, supra, the plaintiff brought an age discrimination case against his employer. The defendant filed a motion in limine to prevent the introduction of evidence concerning the employer's alleged previous incidents of discrimination. The court found that the plaintiff could not establish a continuing violation under Title VII. On the issue of whether the plaintiff could offer evidence of other alleged discriminatory acts from several years earlier, the court held that such evidence was inadmissible under Fed. R. Evidence 401, 402 and 403. In so holding, the court stated:

> Because the court has already found that the evidence is insufficient to establish a continuous practice or policy of discrimination, plaintiff may not use the evidence to establish a pattern or practice of discrimination as part of his prima facie case. . . .[citation omitted]. Moreover, presentation of such evidence would be likely to confuse the jury, unfairly prejudice the defendant and unduly delay the trial.

Wingfield, 678 F. Supp. at 983. The rationale in Wingfield is equally applicable to the present case.

See also, Bickerstaff v. Vassar College, 196 F.3d 435, 450-51 (2d Cir.1999) (noting that even one decision-maker with impermissible bias may taint the proceedings, but finding no causal relationship); Wang v. N.Y.C. Dept. of Finance, 1999 WL 529550, *21 (E.D.N.Y. 1999) (finding no nexus between prior evidence of alleged discrimination and present timely claim because the individual involved had no connection); Malarkey v. Texaco, Inc., 794 F. Supp. 1237, 1241-1242 (S.D.N.Y. 1992), aff'd, 983 F.2d 1204 (2d Cir. 1993) (rejecting defendant's claim that independent decision-makers, who did not know of plaintiff's failure to promote claim, made decision to terminate).

However, for several reasons evidence of Alungbe's prior applications are both irrelevant and unfairly prejudicial. On the issue of relevance, the affidavit of Ms. Munroe shows that different people were involved in the decision making process in 1995-1999. It is true that President Judd was the ultimate decision maker in all of these years, but the input for various university personnel differed. For instance, Ms. Munroe states that in 1995-96, the Dean of the School of Technology was Dr. John Wright. In the fall of 1997 the interim Dean was Dr. Baron. Finally, in 1998-1999, Dr. Zadislaw Kremens, the current Dean, was the one who made a recommendation to the President. Unknown at this time is which faculty members sat on the university-wide Promotion and Tenure Committee, which also makes a recommendation to the President each year. These

differences in personnel suggest a lack of foundation for the probative value of this evidence.

Additionally, such evidence unnecessarily broadens the litigation and forces the defendant to litigate issues that have already been rejected by the court.   In a case involving an allegation of age discrimination, the Second Circuit refused to permit the plaintiff from introducing testimony of other employees concerning their terminations. Haskell v. Kaman Corp., 743 F.2d 113 (2d Cir. 1984).  In Haskell, the court noted that even a well-written jury instruction could not limit the unfair prejudice caused by such testimony.

In the instant case, if Defendant is forced to defend against each instance when Plaintiff applied for a promotion and was denied, the very nature of the case changes. Instead of litigating the Defendant's motive for its decision in 1999, Defendant must prove a nondiscriminatory motive for prior decisions, making it that much more difficult for the jury to limit its inquiry to the 1999 decision.  Admission of this evidence will allow the jury to unfairly infer that the repetitive applications on the part of Plaintiff somehow denote a discriminatory practice and should be precluded in accordance with Fed. R. Evid. 402 and 403.  In short, the prejudicial effect from admitting this evidence will substantially outweigh any probative value it may have.

WHEREFORE, the defendant moves the court for an order in limine prohibiting the plaintiff from offering, mentioning or otherwise referencing the 1996 Climate Survey Report or the plaintiff's applications for promotion prior to the fall of 1999.

DEFENDANT,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
E-mail: Joseph.Jordano@po.state.ct.us

## **CERTIFICATION**

The undersigned hereby certifies that on the 19th day of April, 2005, a true and accurate copy of the foregoing was sent by United State mail, first class postage prepaid, to the following:

Joseph Moniz, Esq.
Moniz, Cooper & McCann, LLP
100 Allyn Street
Hartford, CT  06103

_____
Joseph A. Jordano
Assistant Attorney General

9